UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MIKE HALAWANI,

    Plaintiff,

vs                                                                 Case No: 07-15483
                                                                  Honorable Victoria A. Roberts

HUGH WOLFENBARGER, ET AL,

    Defendants.
_____/

## ORDER GRANTING DEFENDANTS' MOTION

**I.    INTRODUCTION**

This matter is before the Court on Defendants' Motion for Summary Judgment. (Doc. #78). Defendants ask the Court to dismiss Plaintiff Mike Y. Halawani's Second Amended Complaint in its entirety.

Defendants' motion is **GRANTED**.

**II.    BACKGROUND AND PROCEDURAL HISTORY**

    **A.    Plaintiff's Employment as a Porter when Tresna Tupper-McKenzie was his Supervisor**

Halawani is Arabic and practices the Islamic faith. He was an inmate at the Macomb Correctional Facility, but worked as a porter at the Mound Correctional Facility from 7:00 a.m. to 7:00 p.m. Monday through Sunday.

From 7:00 a.m. to 2:00 p.m. Halawani's supervisor was Defendant Tresna Tupper-McKenzie. According to Halawani, Tupper-McKenzie "doesn't like anybody but

1

black [people]," she "constantly expressed her dislike and hatred of Arabs and Chaldeans," and she "constantly made demeaning and degrading comments about Plaintiff's nationality and his religion."

### B. Tupper-McKenzie Terminates Plaintiff's Employment

On September 12, 2005, Tupper-McKenzie terminated Halawani's employment. His Prisoner Program and Work Assignment Evaluation says:

> Inmate Halawni[sic] 216343 started out good[.] [T]he rule and assignments where[sic] given to all three. Halawni[sic] has disregarded the rules. I instructed all porters to stop at the info desk every half hr. [E]veryone does but Halawni[sic]. I have to go looking for him. I caught him sleeping under the stairs. He denied it. He knows not to communicate with visitors he does and speak[s] in arabic and has been asked not to play with the children but he does. When he's needed to do other things he questions are where[sic] the other porters. Him[sic] talking to the Arabic visitor in their language was it.

#### 1. Sleeping on the Job

Tupper-McKenzie says the main reason why Halawani's employment was terminated was because he was sleeping on the job. Tupper-McKenzie says she saw Halawani laying down "sleeping and snoring up a storm."

Halawani denies that he was sleeping. He says he was praying on his "seven point," which includes his feet, hands, knees, and the top of his nose.

When asked at his deposition whether he makes any noises when he prays, Halawani said, "No, it's basically silent, you know, just you praise God and, you know, so on and so forth. You know, it's not loud. It's not like chanting or like going crazy or something, no."

2

### 2. Speaking to a Visitor in Arabic

Tupper-McKenzie says that speaking in Arabic is not a rule violation, but communicating with visitors is a violation. Tupper-McKenzie says she saw Halawani talking to a female in Arabic while he was working.

Halawani says he merely greeted a visitor in Arabic by saying "Peace be upon you."

### C. Transfer to Another Facility

In November 2005, Halawani was placed in a two-man cell with an inmate who did not have a key to the cell. Accordingly, Halawani could not lock his cell, and his property was stolen.

On December 23, 2005, Halawani filed a grievance against Defendant Regina Jenkins, an Assistant Resident Unit Supervisor at the Macomb Correctional Facility, for failure to have a key made for his "bunkie."

On January 27, 2006, Halawani was transferred to the Baraga Maximum Correctional Facility in the upper peninsula.

Halawani says he was transferred in retaliation for pursuing his grievance against Jenkins.

### D. Procedural History

On May 13, 2008, Halawani filed a Second Amended Complaint against Tupper-McKenzie; Jenkins; Hugh Wolfenbarger, the Warden at the Macomb Correctional Facility; Andrew Jackson, the former Warden at the Macomb Correctional Facility; and Charlene Carberry, the former Deputy Warden at the Macomb Correctional Facility.

Carberry was dismissed on March 29, 2010.

## III. STANDARD OF REVIEW

Fed. R. Civ. P. 56(c) provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In reviewing a motion for summary judgment, "the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." *Kochins v. Linden-Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir. 1986).

The movant has the initial burden to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets this burden, the nonmoving party must, by affidavit or otherwise as provided by Rule 56, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The essential inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. If the nonmoving party does not respond with specific facts showing a genuine issue for trial, summary judgment is appropriate. *Emmons v. McLaughlin*, 874 F.2d 351, 353 (6th Cir. 1989).

## IV. APPLICABLE LAW AND ANALYSIS

### A. Count I - Equal Protection Claim Against Tupper-McKenzie

Halawani alleges that Tupper-McKenzie violated the Equal Protection Clause by terminating his employment because of his race, national origin, and/or religious beliefs.

The Equal Protection Clause of the Fourteenth Amendment says, "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." "It is in essence 'a direction that all persons similarly situated should be treated alike.'" *Dorsey v. Palmer*, 1999 WL 777452 at *1 (6th Cir. Sept. 16, 1999) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)).

Halawani says Tupper-McKenzie gave preferential treatment to African-American porters, but he does not name any African-American porters who kept their job after Tupper-McKenzie found them sleeping (or praying) on the job, or after they greeted a visitor while working.

Halawani's equal protection claim fails.

### B. Count II - First Amendment Retaliation Claim Against Jenkins

Halawani says that in retaliation for filing a grievance against her, Jenkins transferred him to a maximum security prison approximately 500 miles away from his home when he had received parole, and when his co-Defendant was housed there. Halawani says there was an order in his file that says he cannot be housed with his co-Defendant.

To succeed on a retaliation claim, Halawani must show: (1) he engaged in protected conduct; (2) an adverse action was taken against him that would deter a

person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by his protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (citations omitted).

Jenkins concedes the first element, that filing grievances is protected conduct.

Halawani's retaliation claim fails on the second element.

Generally, a transfer to another prison "cannot rise to the level of an 'adverse action' because it would not deter a person of ordinary firmness from the exercise of his First Amendment rights." *Smith v. Yarrow*, 2003 WL 22400730 at **12 (6th Cir. Oct. 20, 2003) (citations omitted)).

However, if there are foreseeable consequences of a transfer to another prison that inhibit a prisoner's ability to access the courts, a transfer becomes sufficiently adverse to meet the adverse action requirement for a First Amendment retaliation claim. *Siggers-El v. Barlow*, 412 F.3d 693, 702 (6th Cir. 2005).

Halawani does not allege that his transfer interfered with his ability to access the courts, nor does he allege that his parole was delayed due to the transfer. In addition, Halawani was transferred from Baraga to another prison within a week.

### C. Count III - Supervisory Liability Against Wolfenbarger and Jackson

Halawani does not allege that Wolfenbarger or Jackson personally engaged in unconstitutional conduct. Rather, Halawani says both Wolfenbarger and Jackson knew that Tupper-McKenzie discriminated against him, but they did not take affirmative action to investigate his claim.

To succeed on his supervisory liability claim, Halawani must show that Wolfenbarger and Jackson at least implicitly authorized, approved, or knowingly

6

acquiesced in Tupper-McKenzie's unconstitutional conduct. *See Hays v. Jefferson County*, 668 F.2d 869, 874 (6th Cir. 1982) (citation omitted).

Because the Court finds Tupper-McKenzie's conduct was not unconstitutional, Halawani's claim against Wolfenbarger and Jackson fails.

**V. CONCLUSION**

Defendants' motion is **GRANTED**. Halawani's Second Amended Complaint against Tupper-McKenzie, Jenkins, Wolfenbarger, and Jackson, is **DISMISSED**.

Because Patricia Caruso is not named in the Second Amended Complaint, Halawani's claims against her are **DEEMED WITHDRAWN**.

s/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: August 26, 2010

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on August 26, 2010.

s/Linda Vertriest
Deputy Clerk